IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH BOOKER, ) | |
| No. B75795, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-00560-JPG |
| ) | |
| C/O NEFF, ) | |
| C/O GREGORY, ) | |
| MAJOR MOORE, ) | |
| RICHARD HARRINGTON, and ) | |
| LT. MUILDER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Joseph Booker, an inmate in Stateville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on events occurring at Menard Correctional Center, which is within this judicial district.

This case is now before the Court for a preliminary review of the Second Amended Complaint (Doc. 11) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, in September 2013 Plaintiff was scheduled to be transported from Menard to a court appearance in Cook County, Illinois. Inmates and their personal property are transported separately, with the property items leaving the night before the inmates depart. There was a snafu and Plaintiff's clothing, hygiene items and the paperwork he would need for his court appearance did not make it to the property office in time for transport. A lieutenant told Plaintiff that the legal documents would be retrieved for Plaintiff.

Early on September 25, 2013, C/O Gregory and C/O Neff arrived at Plaintiff's cell to escort him to the transport bus, but they did not have Plaintiff's legal paperwork. Plaintiff explained that he needed the documents for his court appearance, and that he needed to speak to a lieutenant. Neff chastised Plaintiff for not having arranged for the transport of his personal property the day before. C/O Neff had C/O Gregory open the cell door. Neff then grabbed the links of Plaintiff's handcuffs and began racing down the gallery with Plaintiff in tow—dragging Plaintiff. Lt. Muilder, who was on a gallery below, saw Plaintiff lying on the landing.

According to the complaint, Neff was "attacking" Plaintiff (*see* Doc. 11, p. 10).  C/O Gregory had witnessed Neff's actions, but had done nothing until Gregory spotted Lt. Muilder approaching; Gregory then told Neff, "Stop.  That's enough.  Let him get up and walk." (Doc. 1, pp. 10-11).  Lt. Muilder ran up to where Plaintiff and Neff were, demanding to know what Neff was doing.  Neff had no meaningful response.   According to Plaintiff, Neff reeked of alcohol.

Plaintiff remained lying on the landing.  He reported that he could not get up because he had hurt his wrists, shoulder, knee and back.  Lt. Muilder summoned medical help.  As the group awaited the arrival of a med-tech, an off-duty inmate gallery worker who was celled nearby offered to assist getting Plaintiff to his feet.  Muilder said that it would have to be an on-duty worker—meaning that the nearby inmate would not be let out of his cell.

The med-tech arrived and escorted Plaintiff to the health care unit.  (It is not alleged that Plaintiff had to wait long for the med-tech.)  The med-tech perceived that Plaintiff should be seen by a doctor, so Plaintiff was placed on a 24-hour hold—missing the transport bus as a result.  Lt. Muilder instructed the med-tech to report that Plaintiff had refused to get on the transport bus.  Muilder further threatened that, *if* Plaintiff reported the incident, he, Muilder, would tell the Cook County judge that Plaintiff had refused to be transported to court. Documentation attached to the complaint indicates that Plaintiff did report to healthcare officials that he had been dragged down the stairs by a correctional officer (*see* Doc. 11-1, p. 30).  In any event, after the morning shift-change, Plaintiff requested to speak to a lieutenant, Internal Affairs, or the warden so he could report the incident.  Hours later (the next day, according to Doc. 11-1, p. 25), before he was treated, Plaintiff was removed from the health care unit and taken to segregation at the direction of Major Moore, purportedly so that Plaintiff could not report the incident.

After Plaintiff convinced prison staff that he was not going to report the incident, he was transported to state court on September 27, 2013. Plaintiff then explained to the judge what had happened and how he had not received medical treatment. At the judge's direction, Plaintiff was transported to Pontiac Correctional Center for medical treatment, and an investigation was initiated. On October 4, 2013, Plaintiff wrote to Richard Harrington, the warden at Menard, asking that criminal charges be brought against C/O Neff for assaulting Plaintiff (Doc. 11-1, pp. 23-27).

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The claims are not framed exactly as they are in the complaint because of some confusion regarding legal standards and terminology. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any intended claims that have been omitted should be considered insufficiently pleaded and dismissed without prejudice.

> **Count 1:** **C/O Neff used unnecessary and excessive force against Plaintiff, in violation of the Eighth Amendment;**
>
> **Count 2:** **C/O Gregory failed to protect Plaintiff from harm, in violation of the Eighth Amendment;**
>
> **Count 3:** **Lt. Muilder failed to protect Plaintiff from harm, in violation of the Eighth Amendment;**
>
> **Count 4:** **Lt. Muilder and Maj. Moore, individually or in conspiracy, were deliberately indifferent to Plaintiff's serious medical needs by causing Plaintiff to be removed from the health care unit before treatment, in violation of the Eighth Amendment;**
>
> **Count 5:** **Lt. Muilder and Maj. Moore, individually or in conspiracy, attempted to cover-up the incident and/or prevent Plaintiff from seeking redress, in violation of the First Amendment; and**

> **Count 6: Warden Harrington failed to protect Plaintiff from cruel and unusual punishment, in violation of the Eighth Amendment.**

Plaintiff seeks declaratory judgment, as well as compensatory and punitive damages, along with costs and attorney's fees.

## Discussion

### Counts 1-3

Counts 1-3 all pertain to Plaintiff being dragged down the stairs by C/O Neff. Neff was the principal actor, while C/O Gregory was present during the entire incident but did nothing to stop Neff. Lt. Muilder is alleged to have condoned Neff's action.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S.CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012).

Count 1 against C/O Neff, and Count 2 against C/O Gregory both state colorable claims and shall proceed.

Count 3 against Lt. Muilder, as pleaded, fails to state a colorable claim. A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). According to the complaint, Lt. Muilder did not encounter Plaintiff until Plaintiff was already lying at the bottom of the landing (*see* Doc. 11, p. 10 ¶ 13). Muilder could not have done anything after-the-fact to protect Plaintiff from being dragged down the steps. Count 3, therefore, will be dismissed. Out of an abundance of caution, dismissal shall be without

prejudice. Allegations that Muilder condoned Neff's conduct after the fact by attempting to orchestrate a cover-up are presented in Count 5.

**Count 4**

Count 4 pertains to Plaintiff being removed from the health care unit before he received treatment—allegedly in order to prevent him from reporting the Neff incident. Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

According to the compliant, "per Major Moore," Plaintiff was removed from the health care unit and taken to segregation, although no disciplinary charge was ever lodged against Plaintiff (*see* Doc. 11, pp. 13-14 ; 11-1, pp. 1-2, 7-8). On the other hand, Lt. Muilder is alleged to have been the "ring leader" of the cover-up, and his unspecified action led to Plaintiff being denied medical attention at Menard (*see* Doc. 11-1, pp. 4, 6). Major Moore is clearly implicated in preventing Plaintiff from receiving medical care, but no claim is stated against Muilder.

The complaint fails to adequately plead a conspiracy between Lt. Muilder and Major Moore that would impose liability upon Muilder for preventing Plaintiff from receiving medical care. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury

or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)). There is *nothing* to bridge the gap between the allegation that Lt. Muilder initiated a cover-up and the allegation that Major Moore directed that Plaintiff be moved to segregation. Consequently, the allegations of conspiracy in Count 4 fail, and the Eighth Amendment claim against Lt. Muilder will be dismissed without prejudice. Count 4 shall otherwise proceed against Major Moore.

**Count 5**

Count 5 pertains to the alleged cover-up of the Neff incident. For the same reasons the conspiracy allegation in Count 4 relative to Lt. Muilder and Major Moore preventing Plaintiff from receiving medical care failed, the conspiracy allegation within Count 5 fails, leaving the individual involvement by Muilder and Moore to be assessed.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000). In order to state a claim for retaliation for exercising one's First Amendment right, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor" behind the retaliatory actions. *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006).

It is clearly alleged that Lt. Muilder initiated a cover-up of the Neff incident when he, Neff, Gregory and Plaintiff were all at the bottom of the stairway. Muilder, essentially, proposed a *quid pro quo* deal: Plaintiff would remain silent about the incident and, in return, Muilder would not falsely report to the Cook County judge that Plaintiff had refused to get on the transport bus to attend court. It appears that Muilder was intimating that Plaintiff's state court case would be jeopardized if Plaintiff attempted to seek redress for the Neff incident via either a grievance or other judicial or quasi-judicial remedy. Thus, a First Amendment claim has been stated against Lt. Muilder.

The allegations regarding Major Moore are too attenuated to satisfy the *Twombly* pleading standard. All that is alleged is that Moore directed that Plaintiff be moved from the health care unit to segregation. Without more, there is no basis to infer any desire to cover-up anything or, as already noted, to infer that Moore was aware of and part of a cover-up conspiracy. Major Moore will be dismissed from Count 5 without prejudice.

**Count 6**

Count 6 rests upon the October 4, 2013, letter Plaintiff wrote while at Pontiac Correctional Center to Warden Harrington at Menard (*see* Doc. 11-1, pp. 23-27). The thrust of the letter was that the Warden's policy was to criminally prosecute inmates who assaulted guards, so Plaintiff expected the converse to be true: guards who assault inmates will be criminal prosecuted (*see* Doc. 11-1, p. 26). Plaintiff specifically stated that he wanted to press criminal charges against C/O Neff (*see* Doc. 11, p. 15 ¶ 32; Doc. 11-1, pp. 8, 26). It is alleged that Warden Harrington is "legally responsible for the operation {of Menard} and for the welfare of all inmates of that prison." (Doc. 11-1, p. 8 ¶ 70). It is further claimed that Harrington "failed

to protect Plaintiff from violations of his right to be free from cruel and unusual punishment" (Doc. 11-1, p. 8 ¶ 71).

As a preliminary matter, it is noted that a private citizen cannot compel enforcement of criminal law. *See generally Diamond v. Charles,* 476 U.S. 54, 64–65 (1986).

Because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Accordingly, Harrington cannot face liability merely because he is the chief administrative officer of the prison.

Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002). However, there is no allegation of a policy of practice attributable to Warden Harrington. Nor is there any allegation of his personal involvement in Plaintiff being dragged by Neff, being denied medical care, or any sort of cover-up or conspiracy. Similarly, there is no allegation that Harrington was enforcing any other official policy, practice or custom from which liability could attach.

Count 6 and Warden Harrington will be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 3**, the Eighth Amendment "failure to protect" claim against Lt. Muilder, is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **LT. MUILDER** is **DISMISSED without prejudice** from **COUNT 4**, and the Eighth Amendment "medical" claim and the conspiracy aspect of **COUNT 4** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **MAJOR MOORE** is **DISMISSED without prejudice** from **COUNT 5**, and the First Amendment claim and the conspiracy aspect of **COUNT 5** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **WARDEN RICHARD HARRINGTON and COUNT 6** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 1** against **C/O NEFF**, **COUNT 2** against **C/O GREGORY**, **COUNT 4** against **MAJOR MOORE**, and **COUNT 5** against **LT. MUILDER** shall otherwise **PROCEED**.

The Clerk of Court shall prepare for Defendants **C/O NEFF**, **C/O GREGORY**, **MAJOR MOORE**, and **LT. MUILDER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including Plaintiff's motion for counsel (Doc. 3). However, Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) shall be decided by separate order by the undersigned district judge.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 27, 2015**

*s/J. Phil Gilbert*
**United States District Judge**